# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUADALUPE SANTOS, ) | 1:08-cv-00565 AWI GSA |
| ) | |
| Plaintiff, ) | ORDER RE: MOTION TO PERMIT |
| ) | DISCOVERY |
| v. ) | |
| ) | (Document 19) |
| QUEBECOR WORLD LONG TERM ) | |
| DISABILITY PLAN, ) | |
| ) | |
| Defendant. ) | |

Plaintiff Guadalupe Santos ("Plaintiff") filed the instant motion to permit discovery on October 10, 2008.  Defendant Quebecor World Long Term Disability Plan ("Defendant") opposed Plaintiff's motion.  This court considered the motion on the record and without oral argument on the now vacated November 21, 2008 hearing.  As discussed more fully below, the motion is GRANTED IN PART and DENIED IN PART.

## PROCEDURAL BACKGROUND

On April 23, 2008, Plaintiff filed this action, contending that she is entitled to long-term disability benefits under an employee welfare benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*.  Plaintiff seeks a declaratory judgment for the payment of long-term disability benefits, along with attorney fees and costs.  Defendant filed an answer to the complaint on June 9, 2008.

On July 24, 2008, the Court entered a scheduling order in this matter.  The order set a briefing schedule on the issue of whether, and to what extent, Plaintiff was permitted to conduct

discovery in this matter. (Doc. 13). Pursuant to the stipulation of the parties, the Court's scheduling order was modified on August 27, 2008. The modified scheduling order provided that Plaintiff must file a motion for leave to conduct discovery on or before October 10, 2008. (Doc. 15).

In accordance with the Court's order, Plaintiff filed the instant motion for discovery on October 10, 2008. Plaintiff is seeking discovery outside the administrative record regarding defendant's alleged conflict of interest in administering Plaintiff's claim for long term disability benefits. Plaintiff contends that she is entitled to certain requested discovery, including depositions of insurance company employees and reviewing doctors. Defendant counters that Plaintiff's requests are excessive and are not narrowly tailored to the issue of conflict of interest.

## FACTUAL BACKGROUND

According to her complaint, Plaintiff was employed by Quebecor World as a Supervisor and was a participant in the Quebecor World Long Term Disability Plan ("Plan"). The Plan is insured by Hartford Life Group Insurance Company and provides long term disability benefits to Quebecor World employees meeting the Plan's definition of total disability.

Plaintiff alleges that she is totally disabled and completely ceased work on December 19, 2005. She was granted long-term disability benefits under the Plan by letter dated August 31, 2006. Thereafter, Plaintiff's benefits under the Plan were terminated by letter dated July 30, 2007. On January 23, 2008, Plaintiff appealed the termination. Plaintiff's appeal was denied and she exhausted her administrative remedies.

Plaintiff asserts that the denial of long-term disability benefits was arbitrary and capricious and that she continues to be disabled under the terms of the Plan. She desires a judicial determination of her rights, along with a declaration that the Plan is obligated to pay her long-term disability benefits. *See generally* Complaint.

## PLAINTIFF'S REQUESTED DISCOVERY

Plaintiff seeks the following discovery: (1) a Rule 30(b)(6) deposition of Hartford, the insurance company which paid claims and determined whether claimants were eligible for benefits; (2) if necessary, 30(b)(6) depositions of the services--Reed Review Service, MES

Solutions--which provided reviewing doctors to Hartford; and (3) if necessary, depositions of the three reviewing doctors--Dr. Gary Nudell, Dr. Kelly Clark and Dr. Mark Burns.  Plaintiff argues that the discovery sought is directed to Hartford's "conflict of interest in evaluating that conflict of interest for the purpose of evaluating the propriety of its action terminating [Plaintiff's] benefits."  Plaintiff's Points and Authorities in Support of Motion to Permit Discovery, p. 1.

Defendant counters that the proposed discovery is "outrageously excessive."  Defendant's Opposition to Plaintiff's Motion to Permit Discovery, p. 7.

## **DISCUSSION**

**A.     Motion for Discovery**

   1.     *Discovery in ERISA Actions*

The discovery allowed in ERISA actions challenging the denial of benefits, if any, is directly related to the standard of review employed by the Court.  While the default standard of review is *de novo*, the Court will review the decision for abuse of discretion where an ERISA plan grants discretion to the plan administrator.  *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955, 967 (9th Cir. 2006) (en banc).  In this instance, neither party appears to contend that the standard of review is *de novo*.  Accordingly, *Abatie* provides that an abuse of discretion review is limited to the administrative record.  *Id*. at 970.  However, a district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent and effect on the decision-making process of any conflict of interest; the decision on the merits, though must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise.  *Id*. at 970.

The United States Supreme Court confirmed in *Metropolitan Life Insurance Co. v. Glenn*, 128 S.Ct. 2343 (2008) that a conflict of interest "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration."  *Id*. at 2351.  The Court held that a district court could consider evidence of an administrator's actions taken in an effort "to reduce potential bias and to promote accuracy," such as "walling off claims administrators from those interested in firm

finances," or "imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Id.*

Taken together, *Glenn* and *Abatie* require a district court to consider the conflict of interest as a factor whose weight depends on the "nature, extent, and effect" of the conflict on the decision-making process, which may be unmasked through discovery. *Abatie*, 458 F.3d at 967, 970; *see also Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 949-50 (9th Cir. 2007) (court awarded partial attorney's fees by concluding that some discovery aimed at demonstrating a conflict of interest may be appropriate). However, "such discovery must be narrowly tailored and cannot be a fishing expedition." *Groom v. Standard Ins. Co.*, 492 F.Supp.2d 1202, 1205 (C.D.Cal. 2007). It must be limited to requests that are relevant to the "nature, extent, and effect on the decision-making process of any conflict of interest." For example, relevant inquiries might include those designed to obtain "evidence of malice, of self-dealing, or of a parsimonious claims-granting history." *Id*. at 1206 (quoting *Abatie*, 458 F.3d at 968).

    2.    *Analysis*

        a.    A Rule 30(b)(6) Deposition of Hartford.

Plaintiff requests a Rule 30(b)(6) deposition of Hartford. The deposition notice is a 26-page document that includes definitions, instructions and thirteen separate areas of inquiry with listed questions. Attachment to Motion to Permit Discovery.

The first area of inquiry ("Preliminary Questions") includes questions about documents reviewed, deposition preparation, prior depositions, prior statements under oath, and personal background (education and employment). Defendant asserts that these questions have nothing to do with a conflict of interest. The Court finds these areas of inquiry to be common and appropriate, relating to issues of credibility and veracity.

The second area of inquiry ("The Policy") includes questions about Hartford policy amendments, documents which control, describe or determine the relationship between Hartford and the Plan, and whether the policy has been terminated. Defendant contends that these matters have nothing to do with a conflict of interest arising out of Hartford's role as claim administrator

4

and funder of the plan.  The Court finds this area of inquiry appropriate to ascertain whether Plaintiff has all relevant plan documents.

The third area of inquiry ("Deponent's Records, Documents and Procedures") asks the deponent to identify, produce and discuss each document applicable to the adverse determination and the standards utilized by the benefits personnel.  This area of inquiry also asks the deponent to discuss and explain the practices and procedures referenced in the claims manual applicable to their actions with reference to Plaintiff's claim.  Defendant asserts that 29 individuals would be required to testify regarding their involvement in Plaintiff's claim and would be required to discuss and explain their actions in the file.  Defendant also asserts that this area of inquiry does not relate to conflict of interest.  The Court agrees in part.  Plaintiff is entitled to the production of documents relating to the procedures used in determining her claim, including the criteria used in making decisions.  However, to the extent this area of inquiry is directed at the underlying rationale for deviation, if any, from the claims manual and not the structural conflict of interest, it is not appropriate for discovery.

The fourth area of inquiry ("Records of Claims Administration") seeks statistics regarding long-term disability claims.  Plaintiff is entitled to information regarding the claims granting history.  As Plaintiff has indicated that areas of inquiry can be responded to with a list or summary of information, statistical records should be produced.

The fourth area of inquiry also seeks information regarding steps to reduce potential bias of claims personnel, promote accuracy, walling off claims administrators from those interested in firm finances, management checks that penalized inaccurate decisions, level of experience of claims personnel, standards for claim staff accountability and whether there were separate compliance/accountability functions.  Defendant argues that Plaintiff has not made any effort to justify these categories of inquiry.  However, these categories relate to efforts to reduce bias, promote accuracy and wall off administrators and are appropriate for discovery.

Additionally, the fourth area of inquiry asks for information regarding the criteria for selection of individuals to conduct peer reviews, IME's and FCE's. To the extent such criteria exist, they relate to potential bias and should be produced.

In the fourth area of inquiry, Plaintiff also seeks information regarding whether claims personnel and external reviewers evaluated all evidence in the claim file and whether claims personnel "afford appropriate weight in developing a coherent view of the claimant's medical condition, capacity and restrictions and limitations." These questions appear related to the underlying rationale of the decision and not to conflict of interest. Accordingly, Plaintiff is not entitled to such discovery.

Insofar as Plaintiff seeks statistical information regarding the number of claimants seeking long term disability benefits with certain diagnoses, the approval rate of such claims, and claims granting history related to those with a familial, fiduciary or close relationship with Hartford, Plaintiff is entitled to information regarding the claims and claims granting history. As Plaintiff has indicated that areas of inquiry can be responded to with a list or summary of information, statistical records should be produced. To the extent Plaintiff seeks definitions or names of individuals, document(s) or summary information should be produced. Plaintiff's request for an explanation as to how a Policy provision is applied appears related to the underlying rationale of the decision and not to conflict of interest. Plaintiff is not entitled to such discovery.

In the fifth area of inquiry ("Social Security Administration Determination"), Plaintiff seeks information regarding policies and procedures regarding weight to be accorded to Social Security Administration determinations and findings, the definition of total disability under the Social Security Act, the weight accorded to the Social Security Administration's determination in Plaintiff's claim, whether the Social Security Administration's conclusions and findings were submitted to reviewing doctors or other benefit personnel and information regarding an appeal denial letter. Defendant does not address these inquiries specifically, but generally objects that Plaintiff has not justified this area of inquiry. Plaintiff is entitled to the policies and procedures of Hartford related to Social Security Administration determinations. However, to the extent she

6

seeks information regarding the weight accorded to the Social Security Administration's determination in her claim, Hartford's explanation as to whether the definition of total disability in the Policy is different than the definition under the Social Security Act, or the position taken in an appeal letter, this line of inquiry relates to the underlying rationale and not a conflict of interest. Accordingly, Plaintiff is not entitled to such information.

In the sixth area of inquiry ("Communications with Outside Vendors"), Plaintiff seeks identification of every communication between Hartford and RRS, every communication between RRS and Dr. Nudell, communications with or through MES and communications between MES and Drs. Burns and/or Clark regarding Plaintiff's claim. Insofar as Plaintiff seeks the production of documents, her request is allowed.

In the seventh area of inquiry ("The Contractual Relationship Between Hartford and RRS"), Plaintiff requests all agreements between Hartford and RSS, the money Hartford paid to RRS, the number of times RRS-provided doctors gave opinions regarding long term disability benefits claimants and whether Hartford holds any financial interest in RRS. In the eighth area of inquiry ("The Contractual Relationship Between Hartford and MES"), Plaintiff seeks all agreements between Hartford and MES, the amount of money Hartford paid MES and the number of time MES-provided doctors provided opinions regarding long term disability benefits The requested information in these areas of inquiry relates to a potential conflict of interest. Plaintiff is entitled to such information.

In the ninth area of inquiry ("Medical Reviewers"), Plaintiff seeks information regarding Gary Nudell, M.D., Kelly Clark, M.D., and Mark Burns, M.D. Plaintiff is entitled to statistical information concerning the number of disability claims by each doctor evaluated on behalf of Hartford, including the number of times the doctors concluded that a claimant was or was not disabled. As to the remaining inquiries, the Administrative Record speaks for itself regarding documents relied on by the doctors in their reports, time spent and money paid.

In the tenth area of inquiry ("The Termination of Plaintiff's Benefits"), Plaintiff seeks information regarding the names of persons who participated in the decision to terminate

Plaintiff's benefits, the chronological order of each and every action taken by each and every person in deciding to terminate Plaintiff's benefits, and documents reviewed by the person or persons who decided to terminate Plaintiff's benefits (Items 1-4). This information does not appear related to conflict of interest and the Administrative Record speaks for itself. Accordingly, Plaintiff's request for this information is denied.

The tenth area of inquiry also seeks information regarding compensation, bonuses, raises, evaluations, promotions, promotional opportunities and any other incentive. This information is not narrowly-tailored to the issue of conflict of interest and Plaintiff's request for such information is denied.

However, to the extent Plaintiff is requesting information regarding claims reserves for Plaintiff's long term disability claim, she is entitled to such information. *See McCurdy v. Metropolitan Life Ins. Co.*, 2007 WL 915177, *3-4 (E.D.Cal. March 23, 2007)(court permitted discovery of documents pertaining to the reserve set for a plaintiff's claim).

In the eleventh area of inquiry ("The Decision to Deny Plaintiff's Appeal"), Plaintiff seeks information regarding the persons who processed or participated in the decision to deny her appeal and the chronological order of such actions and items reviewed by the person(s) who denied her appeal. This information does not appear related to conflict of interest and the Administrative Record speaks for itself. Accordingly, Plaintiff's request for this information is denied.

Insofar as Plaintiff requests information regarding all rules, practices, procedures, guidelines, standards, criteria, and memoranda regarding compensation, bonuses, raises, evaluations, promotions and promotional opportunities and/or any other incentives applicable to benefits personnel relevant to deciding Plaintiff's appeal, Plaintiff is entitled to such information.

In the twelfth area of inquiry ("Defendant's Affirmative Defenses"), Plaintiff seeks information regarding Hartford's affirmative defenses. It does not appear from the record that Hartford has asserted any affirmative defense in this matter. Accordingly, Plaintiff's request is denied.

In the thirteenth area of inquiry ("Counterclaim"), Plaintiff asks for information regarding the number of long term disability claims and appeals approved/denied by Hartford and other statistical information regarding long term disability claims. Plaintiff is entitled to such information as it relates to the claims granting history of Hartford.

In addition to the outlined areas of inquiry, Plaintiff seeks the production of additional documents identified in 33 separate requests. Defendant objects that the document request is not narrowly-tailored to the issue of conflict of interest. Plaintiff has not indicated in her moving papers the reason for such requests and the Court is not inclined to parse through Plaintiff's document request, as it has done with Plaintiff's deposition notice, to determine the appropriateness of Plaintiff's requests. Accordingly, Plaintiff's separate request for documents is denied without prejudice.

        b.      Possible Rule 30(b)(6) Depositions of Reed Review Services and MES Solutions

Plaintiff requests depositions, if necessary, of Reed Review Services and MES Solutions. Defendant argues that Plaintiff has not stated with particularity the grounds for seeking these depositions. In short, Defendant contends that Plaintiff does not tell the court what would make these depositions necessary or how they are limited to the issue of conflict of interest. The Court agrees and denies the request for depositions of Reed Review Services and MES Solutions without prejudice and subject to renewal by Plaintiff.

        c.      Possible Individual Depositions of Drs. Nudell, Clark and Burns.

Finally, Plaintiff requests individual doctor depositions, if necessary, relevant to conflict of interest. Although Plaintiff details 13 areas of proposed inquiry, including standard introductions and admonitions, descriptions of experience and qualifications and relationship with Hartford, Plaintiff has not demonstrated the necessity of such depositions. Accordingly, the Court denies the request for depositions of Drs. Nudell, Clark and Burns without prejudice and subject to renewal by Plaintiff.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion to Permit Discovery is GRANTED IN PART AND DENIED IN PART.


IT IS SO ORDERED.

Dated:   **January 16, 2009**                    **/s/ Gary S. Austin**
                                                 UNITED STATES MAGISTRATE JUDGE