IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUADALUPE SANTOS, ) | 1:08-CV-565 AWI GSA |
| ) | |
| Plaintiff, ) | ORDER ON DEFENDANT'S |
| ) | MOTION FOR PARTIAL |
| v. ) | RECONSIDERATION OF |
| ) | MAGISTRATE JUDGE'S |
| QUEBECOR WORLD LONG TERM ) | DISCOVERY RULINGS |
| DISABILITY PLAN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This is an Employee Retirement Insurance Security Act ("ERISA"), 29 U.S.C. § 1001 et. seq., case brought by Plaintiff Guadalupe Santos ("Santos") against Defendant Quebecor World Long Term Disability Plan ("Quebecor"). Santos was employed by Quebecor World and was insured under a long term disability plan ("the Plan"). The Plan was insured and administered by Hartford Insurance Company ("Hartford"). See Court's Docket Doc. No. 20 at p.2. The Plan also gives Hartford discretion to interpret Plan terms and determine benefit eligibility. See id.

Santos filed a motion for discovery and sought to conduct a Rule 30(b)(6) deposition of Hartford, and perhaps RRS and MES (two claims review services utilized by Hartford). The proposed Rule 30(b)(6) deposition notice is divided into several areas of inquiry, with each area

having several questions and subquestions. The deposition notice[1] also requested that various documents be produced. On January 16, 2009, the Magistrate Judge issued an order that granted in part and denied in part Santos's motion. See Docket Doc. No. 32. On January 26, 2009, Quebecor filed a request for partial reconsideration of eight of the Magistrate Judge's rulings. See Docket Doc. No. 34. For the reasons that follow, the Court will grant in part and deny in part Quebecor's request for reconsideration.

## **LEGAL STANDARDS**

*Review of a Magistrate Judge's Ruling*

A district court may refer pretrial issues to a magistrate judge under 28 U.S.C. § 636 (b)(1). See Bhan v.NME Hosp., Inc., 929 F.2d 1404, 1414 (9th Cir. 1991). If a party objects to a non-dispositive pretrial ruling by a magistrate judge, the district court will review or reconsider the ruling under the "clearly erroneous or contrary to law" standard. Fed. R. Civ. Pro. 72(a); Osband v. Woodford, 290 F.3d 1036, 1043 (9th Cir. 2002); Grimes v. City of San Francisco, 951 F.2d 236, 240-41 (9th Cir. 1991). A magistrate judge's factual findings are "clearly erroneous" when the district court is left with the definite and firm conviction that a mistake has been committed. Security Farms v. International Bhd. of Teamsters, 124 F.3d 999, 1014 (9th Cir. 1997); Green v. Baca, 219 F.R.D. 485, 489 (C.D. Cal. 2003). However, the district court "may not simply substitute its judgment for that of the deciding court." Grimes, 951 F.2d at 241. The "contrary to law" standard allows independent, plenary review of purely legal determinations by the magistrate judge. See Osband, 290 F.3d at 1043; Haines v. Liggett Group, Inc., 975 F.2d 81, 91 (3rd Cir.1992); Green, 219 F.R.D. at 489. "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." Knutson v. Blue Cross & Blue Shield of Minn., 254 F.R.D. 553, 556 (D. Minn. 2008); Rathgaber v. Town of Oyster Bay, 492 F.Supp.2d 130, 137 (E.D. N.Y.2007); Surles v. Air France, 210 F.Supp.2d 501, 502 (S.D. N.Y.

---

[1]There are two depositions notices: the first submitted in connection with the motion for discovery and the second, revised notice submitted with Santos's opposition to reconsideration. The revised notice appears to be identical to the original notice except that certain questions have been deleted in response to the Magistrate Judge's rulings. Unless otherwise noted, a reference to the "deposition notice" refers to the revised notice.

2

2001); see Adolph Coors Co. v. Wallace, 570 F.Supp. 202, 205 (N.D. Cal. 1983). A magistrate judge's pre-trial discovery orders are generally considered non-dispositive orders. See Osband, 290 F.3d at 1043; Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990); Rockwell Intern., Inc. v. Pos-A-Traction Industries, Inc., 712 F.2d 1324, 1325 (9th Cir. 1983).

*Discovery Under ERISA*

In reviewing the benefits decision of an ERISA plan administrator under the abuse of discretion standard, a court must weigh any conflict of interest under which the plan administrator labors. Nolan v. Heald College, 551 F.3d 1148, 1153 (9th Cir. 2009); Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 970 (9th Cir. 2006) (en banc). As part of the weighing process, the district court may consider evidence outside of the administrative record to decide the conflict's "nature, extent, and effect" on the plan administrator's decision making process. Nolan, 551 F.3d at 1153; Abatie, 458 F.3d at 970. The nature, extent, and effect of the conflict on the decision making process "may be unmasked through discovery." Wilcox v. Wells Fargo & Co. Long Term Disability Plan, 287 Fed.Appx. 602, 604 (9th Cir. 2008). However, "[w]hether to permit discovery into the nature, extent, and effect of the Plan's structural conflict of interest is also a matter within the district court's discretion." Burke v. Pitney Bowes, Inc. Long Term Disability Plan, 544 F.3d 1016, 1028 n.15 (9th Cir. 2008). In other words, the Ninth Circuit "does not mandate such discovery in all circumstances, but leaves the matter to the district court's discretion." Baldoni v. Unum Provident, 2009 U.S. App.LEXIS 4897, *2 (9th Cir. Mar. 11, 2009). Any discovery that is allowed should be narrowly tailored to illuminate the "nature, extent, and effect" of a conflict of interest on a decision making process and should not be so broad as to constitute a fishing expedition. See Mazur v. Pacific Telesis Group Comprehensive Disability Bens. Plan, 2008 U.S. Dist LEXIS 28208, *6 (N.D. Cal. Feb. 28, 2008); Toven v. Metropolitan Life. Ins. Co., 517 F.Supp.2d 1174, 1176 (C.D. Cal. 2007); Groom v. Standard Ins. Co., 492 F.Supp.2d 1202, 1205 (C.D. Cal. 2007); see also Bartholomew v. Unum Life Ins. Co., 579 F.Supp.2d 1339, 1342 (W.D. Wash. 2008); cf. Schoettler v. Wachovia Corp./Wachovia Corp. Long Term Disability Plan, 2008 U.S. Dist. LEXIS 47096, *10-*11 (E.D. Cal. May 23, 2008).

# **CHALLENGED RULINGS**

**1.    Documents Relating To Procedures Used In Determining The Claim** ("Ruling One")

*The Ruling*

The Magistrate Judge ruled:

Plaintiff is entitled to the production of documents relating to the procedures used in determining her claim, including the criteria used in making decisions. However, to the extent this area of inquiry is directed at the underlying rationale for deviation, if any, from the claims manual and not the structural conflict of interest, it is not appropriate for discovery.

*Defendant's Argument*

Quebecor argues that the order is vague and not narrowly tailored. The area of inquiry is entirely directed at the underlying rationale for any deviation from the decision making criteria. Deviation from criteria might pertain to the reasonableness of the decision, but it would not establish that the deviation was because of a conflict of interest. This area is irrelevant to the issue of conflict.

*Plaintiff's Response*

Santos argues that the ruling is neither vague nor overly broad. The ruling requires Hartford to produce certain categories of documents (identified in the first six questions of Attachment B of the deposition notice) regarding its standards and procedures in making benefit determinations. The ruling prohibits Santos from asking Hartford to explain the underlying rationale for the decision.

*Resolution*

Ruling One and the first six questions of Attachment B are overly broad and not sufficiently tailored. Santos is attempting to obtain the entire claims manual and to determine Hartford's compliance with the various requirements of 29 C.F.R. 2560.503-1.

The Court may consider procedural irregularities in reviewing the claims decision, and, if the irregularities are sufficiently severe or flagrant, evidence outside the administrative record may be considered or the standard of review may be altered. See Abatie, 458 F.3d at 972-73. Such procedural irregularities should be apparent based on the administrative record and the

express dealings with Santos (for example failing to perform an adequate investigation or relying on a new ground of denial in the final decision letter). Santos has listed various provisions of the C.F.R. that she argues appear to have been violated. However, for most of the identified sections, if there was a violation, it should be apparent from the record. For those that may not be apparent, without a more concrete indication that the C.F.R. provisions have been violated, the request is a fishing expedition.[2] The Court will be able to examine any procedural irregularities from the administrative record, and discovery in this area is not appropriate.

With respect to the claims manual or the other documents utilized in reviewing the claim, such documents must be able to shed light on the nature, extent, and effect of Hartford's inherent conflict of interest. The documents that would be relevant to such an inquiry are documents that emphasize cost savings in reviewing a claim, encourages denials, requires denials as a matter of course, emphasizes that denying claims saves the administrator money, or explain how to view certain symptoms, conditions, or evidence. The Court is aware of no automatic right to the plan administrator's claims manual in an ERISA case. Providing all internal rules or the entire claims manual or all protocols is simply too broad.

Ruling One and the corresponding deposition notice is too broad and not sufficiently tailored to shed light on Hartford's structural conflict of interest. Reconsideration is granted in that discovery into violations of 29 C.F.R. 2560.503-1 will not be permitted and Hartford need not produce "all documents" relating to the review and determination of Santos's claim or its claims manual. Instead, Santos may seek to discover documents by Hartford that were utilized or that had application to Santos's claim and that emphasize cost savings in reviewing a claim, encourages denials, requires denials as a matter of course, emphasizes that denying claims saves the administrator money, or explains how to view certain symptoms, conditions, or evidence.

---

[2]Santos states that complying documentation has not been identified or provided. However, the mere failure to voluntarily give internal policies and documents to opposing counsel does not justify discovery.

## 2. Information Regarding Claims Granting History ("Ruling Two")

*The Ruling*

The Magistrate Judge ruled:

> The fourth area of inquiry . . . seeks statistics regarding long-term disability claims. Plaintiff is entitled to information regarding the claims granting history.

*Defendant's Argument*

Quebecor argues that this portion of the order is vague and overly broad. It does not specify what statistics should be included and does not limit the area of inquiry in any way, such as in time, geography, or type of claim. Further, there is no evidence that statistics or summaries exist or are readily available. Statistical data on claims granting does not establish that the claim in this case was terminated due to a conflict of interest. There is no explanation how this ruling is narrowly tailored to show the effect of the conflict.

*Plaintiff's Response*

Santos argues that the ruling is neither vague nor overly broad. The ruling directly relates to Area of Inquiry IV of the deposition notice and has caused the deletion of six specific questions.

*Resolution*

Ruling Two is on its face vague, but in relation to the deposition notices (both the original and the revised), this Court reads Ruling Two as corresponding/relating to Area IV, Question 1. That question has various subquestions, is limited to the years 2006 through 2008,[3] relates only to LTD benefits, and seeks information about LTD claimants and their social security status, i.e. those who received benefits and those who did not.

As to the objection that it is not clear how Ruling Two is narrowly tailored to illuminate the structural conflict of interest, the Ninth Circuit has explained:

> In *Abatie*, we explained that a reviewing court must always consider the "inherent conflict that exists when a plan administrator both administers the plan and funds it." We "weigh" such a conflict more or less "heavily" depending on what other

---

[3] Question 1 is limited to "the Relevant Time Period." In the definition section, "the Relevant Time Period" is defined 2006, 2007, and 2008. Question 1 defines the term as 2004 through 2007. Given that Santos's claim spans from 2006 through 2008, the Court will read Area IV, Question 1 and Rule Two as being limited to the years 2006 through 2008.

6

evidence is available. We "view[ ]" the conflict with a "low" "level of skepticism" if there's no evidence "of malice, of self-dealing, or of a parsimonious claims-granting history." But we may "weigh" the conflict "more heavily" if there's evidence that the administrator has given "inconsistent reasons for denial," has failed "adequately to investigate a claim or ask the plaintiff for necessary evidence," or has "repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly."

Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 868 (9th Cir. 2008) (citations omitted); Abatie, 458 F.3d at 968. Ruling Two and Question 1 go to showing a parsimonious claims granting history with respect to LTD claims, which would cause the conflict of interest to be viewed with more skepticism than it would otherwise warrant.

It is true that Ruling Two assumes that statistics either exist or are readily obtainable. If the statistics do not otherwise exist and creating them would be an undue burden or expense, Quebecor may move for a protective order on that basis. However, at this point, there is no evidence that producing the statistics called for by Area IV, Question 1 would be unduly burdensome or costly.

Given this reading of Ruling Two, reconsideration is denied.

**3. Criteria For Selecting Peer Reviews, IME's, and FCE's** ("Ruling Three")

*The Ruling*

The Magistrate Judge ruled:

> Additionally, the fourth area of inquiry asks for information regarding the criteria for selection of individuals to conduct peer reviews, IME's and FCE's. To the extent such criteria exist, they relate to potential bias and should be produced.

*Defendant's Argument*

Quebecor argues that Santos was not sent for an IME or FCE, so information regarding the criteria for selection of individuals to perform IME's or FCE's is irrelevant to the potential influence of a structural conflict of interest in Santos's claim.

*Plaintiff's Response*

Since Santos was not sent to an IME or FCE, she argues that several questions are raised: why wasn't she so sent? Why was only a peer review done? If the criteria for peer reviews and IME/FCE's are not the same, why not? Santos argues that this area is relevant to showing bias.

7

*Resolution*

Santos was not sent for an IME or an FCE. The Plan gives Quebecor the ability to require Santos to submit to an IME or an FCE if the administrator so chooses. See Court's Docket Doc. No. 20 at p. 2. However, neither the Plan (according to the submissions presented) nor ERISA requires that Hartford ever utilize an IME or an FCE. See Fought v. Unum Life Ins. Co. of America, 379 F.3d 997, 1015 (10th Cir. 2004); Kushner v. Lehigh Cement Co., 572 F.Supp.2d 1182, 1192 (C.D. Cal. 2008); Walters v. Prudential Ins. Co. of Am., 2007 U.S. Dist. LEXIS 88232, *55 (N.D. Iowa Nov. 30, 2007); Mikrut v. UNUM Life Ins. Co. of Am., 2006 U.S. Dist. LEXIS 92265, *22 n.6 (D. Conn. Dec. 20, 2006); Stith v. Prudential Ins. Co., 356 F.Supp.2d 431, 440 (D.N.J. 2005). Since Hartford was under no requirement to use an IME, but instead merely had the option if it so desired, the failure to order an IME or an FCE reveals only that it chose not to do so. It does not show the nature, extent, or effect of structural conflict of interest. Given this lack of probativeness, reconsideration of Ruling Three is appropriate and Area IV, Questions 10(f) and 11 of the deposition notice will be struck.[4]

**4.    Statistical Information Regarding LTD Benefits** ("Ruling Four")

*The Ruling*

The Magistrate Judge ruled:

> Insofar as Plaintiff seeks statistical information regarding the number of claimants seeking long term disability benefits with certain diagnoses, the approval rate of such claims, and claims granting history related to those with a familial, fiduciary, or close relationship with Hartford, Plaintiff is entitled to information regarding the claims granting history. As Plaintiff has indicated that areas of inquiry can be responded to with a list or summary of information, statistical records should be produced. To the extent Plaintiff seeks definitions or names of individuals, document(s) or summary information should be produced.

*Defendant's Argument*

Quebecor argues that this ruling is vague and overly broad. There is no limit as to time or

---

[4] Courts have recognized the value of an IME. See, e.g., Fought, 379 F.3d at 1015. Although discovery into Hartford's criteria for and IME and FCE will not be allowed, the failure to obtain an IME or FCE is one of the circumstances that this Court may consider in reviewing the benefits decision in this case. See Pitts v. Prudential Ins. Co. of Am., 534 F. Supp. 2d 779, 789-90 (S.D. Ohio 2008); Aluisi v. Elliott Mfg. Co., 2007 U.S. Dist. LEXIS 76106, *45-*46 (E.D. Cal. Sept. 28, 2007).

8

scope and no explanation how a deposition regarding the foregoing would be narrowly tailored. For example, statistical information regarding orthopedic claims across the country over the past five years would not be probative of Santos's claim.

*Plaintiff's Response*

Santos argues that the ruling is neither vague nor overly broad, and it is understandable. The ruling corresponds to Area of Inquiry IV, subcategories 1, 14, 15, 16, and 17.

*Resolution*

The Court reads Ruling Four as relating to Area IV, Questions 1, 14, 15, 16, and 17. As to Question 1, that issue was addressed in the review of Ruling Two.

The objection that Ruling Four is without temporal limit is not well taken. It is true that Ruling Four does not identify a particular time period. However, Questions 14 through 17 of Area IV are each limited to "the relevant time period," which the deposition notice defines as 2006 through 2008.

Questions 14 and 15 seek information regarding the number of LTD claimants who had certain conditions (presumably the conditions that Santos has)[5] and the numbers of those claimants whose claims were approved. The objection that it is not narrowly tailored is not persuasive. This is a narrower area of inquiry than that covered by Ruling Two, but it serves the same purpose. Ruling Four and Questions 14 and 15 go to show a parsimonious claims granting history with respect to certain types of LTD claims, which could cause the conflict of interest to be viewed with more skepticism than it would otherwise warrant. See Saffon, 522 F.3d at 868. However, it appears that Ruling Four assumes that statistics either exist or are readily obtainable. If the statistics do not otherwise exist and creating them would be an undue burden or expense, Quebecor may move for a protective order on that basis. Nevertheless, at this point, there is no evidence that producing the statistics called for by Area IV, Questions 14 and 15 would be unduly burdensome or costly.

Questions 16 and 17 seek statistics regarding the same medical conditions identified in

---

[5] Quebecor does not argue that Santos did not have the four conditions identified in Questions 14 and 15 (fibromyalgia, arthritis, sciatica neuropathy, and depression and anxiety).

9

Questions 14 and 15, but then limit those numbers to claimants who have a familial, fiduciary, or other similarly close relationship to Hartford. There is no indication that Hartford has a different set of criteria for the family members of its employees. It is one thing to seek general information regarding claims granting trends or history, it is another to try and carve out a subcategory of "family member" claims. Without some indication beyond a metaphysical possibility that Hartford utilizes a double standard regarding "family members," Santos is on an inappropriate fishing expedition. Reconsideration of this aspect of Ruling Four is appropriate and Area IV, Questions 16 and 17 are stricken.

**5.   Agreements With, Money Paid To, Doctors Provided To, and Interests In MES & RRS** ("Ruling Five")

*The Ruling*

The Magistrate Judge ruled:

> In the seventh area of inquiry . . . Plaintiff requests all agreements between Hartford and RRS, the money Hartford paid to RRS, the number of times RRS-provided doctors gave opinions regarding long term disability benefits claimants and whether Hartford holds any financial interest in RRS. In the eighth area of inquiry . . . Plaintiff seeks all agreements between Hartford and MES, the money Harford paid to MES, the number of times MES-provided doctors provided opinions regarding long term disability benefit claimants and whether Hartford holds any financial interest in MES. The requested information in these areas relates to a potential conflict of interest. Plaintiff is entitled to such information.

*Defendant's Argument*

Quebecor argues that the ruling, as worded, is unlimited in time and scope and is entirely over broad. It conceivably covers all doctors across the country for all times. The only potentially relevant issue in this case is whether the doctors in this claim were biased and were used in this claim because of their bias and conflict of interest. Even if the doctors used never found disability in any claim, that would not be probative of the influence of a conflict of interest in this case. Further, if the person who selected the doctors to conduct the review did not know about the doctors' history, there is no link between the statistics and the selection of the doctors.

*Plaintiff's Response*

Santos argues that the ruling is neither vague nor overly broad. The ruling relates to Area Inquiry VII of the deposition notice, which is limited in time and scope and relates to the

economic interests of RRS and MES, who were used by Hartford. The issue relates to bias. In *Caplan v. CNA Financial Corp.*, 544 F.Supp.2d 984, 991-92 (N.D. Cal. 2008), the court noted that Hartford's structural conflict of interest was accompanied by reliance on a second company. Hartford knew that the second company had an incentive to provide it with reports that would increase the chances that Hartford would return to that company. The same concern is present in this case with RRS and MES.

*Resolution*

Ruling Five relates to Areas VII & VIII of the deposition notice.[6] These Areas have the same four questions and Questions 2 and 3 are limited to the years 2006, 2007, and 2008. Again, although Ruling Five does not have time limits, Areas VII & VIII do.

With respect to Question 4, this question asks whether Hartford holds a financial interest in RRS or MES. Question 4 is relevant in that it seeks to determine how independent RRS and MES are from Hartford. If Hartford holds financial interests in RRS or MES, then Hartford may be able to control the conduct of these reviewing entities. However, the question is not limited temporally. Any financial interest that Hartford may have in these entities is only relevant for this case if Hartford had such an interest when RRS and MES reviewed Santos's case. That Hartford may now have an interest, but did not in the past, is irrelevant. Accordingly, Santos may ask whether Hartford had a financial interest in RRS and/or MES at the time those entities reviewed Santos's claim.[7]

With respect to Questions 2 and 3, these questions seek the number of times RRS and MES provided doctors to review Hartford's LTD claims and how much Hartford paid RRS and MES for providing services. This area of inquiry goes to show the amount business that Hartford does with RRS and MES. The greater the amount of business that is done, the greater the incentive that RRS and MES have for doing things that please Hartford. See Caplan v. CNA Financial Corp., 544 F.Supp.2d 984, 991-92 (N.D. Cal. 2008). The probativeness of these questions is somewhat limited as a high volume may simply indicate that RRS and/or MES do a

---

[6] Area VII deals with RRS and Area VIII deals with MES.

[7] If the answer is yes, Santos may ask Hartford to describe and explain that interest.

11

thorough and professional job. Nevertheless, courts have considered the amount of business that an administrator does with a reviewing company in order to determine bias. See id. Given the arguments presented, the Court will not grant reconsideration on this aspect of Ruling Five.

Finally, Question 1 seeks the production and description of all agreements between Hartford and MES and/or RRS, including the identity of the persons who negotiated the agreements. First, only agreements that were in force during the time that RRS and MES reviewed the claim are relevant as those are the only agreements that could have influenced Santos's claim. Second, "all agreements" that might exist between Hartford and RRS and/or MES is too broad. The agreements that would be relevant would be those that would help to show the nature, effect, or extent of Hartford's conflict of interest or those that might show RRS and/MES's bias. Thus, agreements that deal with claims review criteria, financial incentives based on denials of claims, and instructions to disregard certain types of evidence or symptoms are the types of agreements that are relevant. Thirdly, the identity of those who negotiated the agreements is unnecessary. The identity of negotiators/authors of the agreements does not help to illuminate the nature, extent, and effect of Hartford's structural conflict.

Accordingly, reconsideration of Question 1 of Areas VII and VII is appropriate. Question 1 will be limited temporally to agreements in existence at the time that RRS and MES reviewed Santos's claim. Further, it is unnecessary to produce "all agreements," rather Santos may inquire into the existence of agreements that show financial incentives for denials of LTD claims or that set the criteria for reviewing LTD claims (including what weight to give or restrictions to place on certain types of symptoms or evidence). Also, Hartford need not disclose who negotiated the agreements. Finally, Question 4 is limited temporally to the time at which RRS and MES reviewed Santos's claim.

**6. Statistical Information Regarding Disability Claims Reviewed By Each Doctor** ("Ruling Six")

*The Ruling*

The Magistrate Judge ruled:

In the ninth area of inquiry, Plaintiff seeks information regarding [Dr.] Gary

> Nudell, [Dr.] Kelly Clark, and [Dr.] Mark Burns. Plaintiff is entitled to statistical information concerning the number of disability claims by each doctor [who] evaluated on behalf of Hartford, including the number of times the doctors concluded that a claimant was or was not disabled.

*Defendant's Argument*

Quebecor argues that the information has possible relevance only if the statistics show a bias in favor of "no disability" and if the claims personnel who selected the doctors knew of the skewed statistics. Without that knowledge, there is no link to any conflict of interest.

*Plaintiff's Response*

Santos argues that the information is relevant to show bias. Hartford selected RRS and MES; RRS and MES selected the doctors. RRS and MES had an incentive to select doctors who would provide "not disabled" opinions because the services obtained a great deal of money from Hartford. The bias is derivative of the services' bias. If the doctors routinely work for the services and provide opinions favorable to their clients, those facts will cast doubt on the neutrality of Hartford's decision making process.

*Resolution*

RRS provided Dr. Nudell and MES provided Drs. Clark and Burns. See Court's Docket Doc. No. 20 p.2. In other words, it is the Court's understanding that Drs. Burns, Nudell, and Clark are not employees of Hartford. Discovery is allowed to determine the nature, extent, and effect of Hartford's structural conflict of interest on the claims decision. If Hartford was aware that RRS and MES and/or the reviewing physicians regularly issued opinions of "no disability" (or the like), then that could be symptomatic of the effect of the structural conflict and/or would cause the Court to weigh the structural conflict more heavily. If Hartford did not know or so perceive, then it does not reflect on Hartford's structural conflict. Without knowledge or perception by Hartford, statistics concerning RRS, MES, or particular medical employees simply does not reflect on Hartford's conflict.

Accordingly, since Drs. Burns, Clark, and Nudell are associated with RRS or MES, reconsideration of Ruling Six is appropriate. Santos may inquire of Hartford whether it perceived or was actually aware of any tendency by Dr. Burns, Dr. Clark, Dr. Nudell, RRS,

and/or MES to routinely or disproportionately make a finding of "no disability" (or the like).[8]

**7.     Information Regarding Claim Reserves** ("Ruling Seven")

*The Ruling*

The Magistrate Judge ruled:

> However, to the extent Plaintiff is requesting information regarding claim reserves for Plaintiff's long term disability claim, she is entitled to such information. See McCurdy v. Metropolitan Life Ins. Co., 2007 WL 915177 (E.D. Cal. March 23, 2007).

*Defendant's Argument*

Santos made no effort to establish a connection between reserve information and the conflict of interest, nor does the ruling explain how such information is relevant to determining the influence of a conflict of interest. There is no evidence that shows the decision makers were aware of the reserve number, let alone that it influenced the decision. Further, reserves are objective and are mandated by law. The mere fact of a reserve shows nothing. If the existence of a reserve in and of itself were pertinent to the conflict of interest inquiry, reserves would be discoverable in every ERISA case, since a reserve is mandated for each claim. Such information is not narrowly tailored.

*Plaintiff's Response*

Santos argues that Hartford has an economic interest in denying claims and the reserves reflect the potential costs of the claim to Hartford. Although there is no evidence that the decision makers of Santos's claim were aware of the reserve amounts, that is the point of discovery. The revised deposition inquiry is limited to one subcategory, item six.

*Resolution*

The Ruling is based entirely on the *McCurdy* case. In *McCurdy*, the ERISA plaintiff sought discovery of the reserve amount that had been set by the defendant for her claim. McCurdy v. Metropolitan Life Ins. Co., 2007 U.S. Dist. LEXIS 25917, *1-*2 (E.D. Cal. March 23, 2007). *McCurdy* permitted a request for production for "all documents constituting,

---
[8]This would include any writing, electronic or otherwise, that reflects on the actual or perceived tendencies of the physicians, RRS, and MES.

14

reflecting, or pertaining to the reserve set, or mandated for, this claim." Id. at *12. *McCurdy* explained that, although the amount of the reserve is determined at least in part by state law, there was no showing that the reserve was irrelevant to a decision to deny benefits when the plan administrator also funds the plan. See id. at *11. One of the defense arguments that was rejected in *McCurdy* was that the administrator's decision makers were unaware of the reserve amounts when they made their decision. See id. at *10-*11. That argument was rejected because the declarations that the administrator had submitted were ambiguous and it was not clear whether other representatives (who apparently did not submit declarations) were also involved in the decision to deny. See id. at *11.

Without further information regarding the setting of reserves, this Court agrees with *McCurdy* to the extent that an awareness by claim decision-makers of the financial reserve for a particular claim may help to illuminate the extent or effect of a structural conflict of interest on that claim.[9] However, the key is whether the decision-maker(s) was aware of the reserve amount that had been set. If the decision-maker(s) is unaware of the reserve amount, then the reserve amount would have played no role in the decision and would not help to explain the extent or effect of the structural conflict of interest on the claim.

Santos states that she has incorporated Ruling Seven into her revised deposition notice at Area X, Question 6. That question asks for each document or thing concerning Hartford's practices and procedures about establishing and changing reserves and then requests all claims reserves set and changes made to the reserves in Santos's case. Ruling Seven is rather general and simply cites to *McCurdy*; as such, partial reconsideration is appropriate. The key is whether the decision-makers were aware of the reserve amount; without that knowledge, the information is simply irrelevant. Thus, while Santos may inquire into the reserve that was set and whether it

---

[9] The only information presented to the Court regarding the setting of a reserve amount is a citation to *American Protection Ins. Co. v. Helm Concentrates, Inc.*, 140 F.R.D. 448, 449 (E.D. Cal. 1991) for the proposition that reserves are objective and mandated by state law. This case at page 449 states, "the establishment and amount of reserves is a matter regulated by California law (California Insurance Code and Administrative Code) and, therefore, the amount of a reserve is at least, in part, determined by statute and not by the insurer's estimate of the likelihood of the claimant's success." There are no further details or explanations provided by Quebecor, and *McCurdy* recognized this citation from *Helm*. Without more from Quebecor, there is insufficient reason to question *McCurdy*.

changed, she may do so only if she first establishes that the decision-makers in her case were aware of that reserve amount. If she establishes this knowledge, then, consistent with *McCurdy*, she may seek "all documents constituting, reflecting, or pertaining to the reserve set, or mandated for, this claim." Id. at *12.

**8.     Information Regarding Long Term Claims And Appeals** ("Ruling Eight")

*The Ruling*

The Magistrate Judge ruled:

> In the thirteenth area of inquiry ("Counterclaim"), Plaintiff asks for information regarding the number of long term disability claims and appeals approved/denied by Hartford and other statistical information regarding the long term disability claims. Plaintiff is entitled to such information as it relates to the claims granting history of Hartford.

*Defendant's Argument*

Quebecor argues that this ruling is so vague and overly broad that it renders compliance impracticable. It is unclear what is expected to be provided, there is no limit in terms of time or scope, and there is no explanation how the ruling is narrowly tailored. Further, such information would not establish a link to Santos's claim unless the decision makers were aware of the "claims handling history." The request threatens to turn every ERISA case into a "bad faith" case and to open the door to institutional data without any showing of a nexus to the claim at hand.

*Plaintiff's Response*

Santos argues that Hartford filed a counterclaim in this case, so Santos seeks discovery on it. Santos believes that Hartford has a policy and practice of denying benefits to claimants whose policy definition of "totally disabled" changes from "own occupation" to "any occupation" if the claimant does not have social security disability benefits. The statistical evidence sought is designed to obtain evidence to present that affirmative defense. The data which Hartford would be required to provide is clearly set forth in the deposition notice.

*Resolution*

In the counterclaim, Quebecor alleges that, under the Policy, it was entitled to reimbursement from Santos for any "overpayment," i.e. income benefits received from third-

party sources. See Court's Docket Doc. No. 22. According to Quebecor, Santos owes it approximately $12,000 for overpayment. See id.

Section XIII of the revised deposition notice is entitled "Counterclaim," is limited to the years 2006 through 2008, and has five questions (questions one and two, but number two has four sub-questions). Santos argues that the information Section XIII seeks to obtain will be used for an affirmative defense, namely that Hartford denies LTD claims if a claimant does not receive social security disability benefits.

However, Santos's answer to the counterclaim contains only one affirmative defense: setoff. See Court's Docket Doc. No. 25. The affirmative defense that she describes is not in her answer. See id. Further, Santos has not cited any cases that recognize an affirmative defense of wrongful denial of benefits due to non-receipt of social security benefits. If anything, this affirmative defense appears to be another way of saying that Quebecor wrongfully denied her benefits, which is what her complaint alleges. Section XIII has nothing to do with the affirmative defense that has actually been pled in this case. Santos has failed to show the propriety of this area of inquiry. Accordingly, reconsideration of Ruling Eight will be granted and discovery under Area XIII will be denied.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendant's motion for partial reconsideration is GRANTED IN PART and DENIED IN PART. Discovery may proceed in accordance with the Magistrate Judge's Rulings as modified above.


IT IS SO ORDERED.

**Dated:   May 13, 2009**          /s/ Anthony W. Ishii
                                  CHIEF UNITED STATES DISTRICT JUDGE